# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Billy Ray Hall,
      Petitioner


      vs                         Case No. 1:06cv723
                                   (Spiegel, S.J.; Black, M.J.)


Ronald Hart,[1]
      Respondent

---

## REPORT AND RECOMMENDATION

---

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition (Doc. 2), respondent's "Answer/Return Of Writ" with exhibits (Doc. 6); and petitioner's "traverse" in reply to the return of writ with exhibits (Doc. 7).

### Procedural Background

On October 13, 2004, the Butler County, Ohio, grand jury returned an indictment charging petitioner with one count of aggravated robbery as defined in Ohio Rev. Code § 2911.01(A)(1) and attached firearm specification.  (*See* Doc. 6,

---

[1] In the petition, petitioner properly named as respondent Ernie Moore, who was then Warden of Lebanon Correctional Institution (LeCI), where petitioner is incarcerated.  However, since the time petitioner instituted this action, Moore was replaced by Ronald Hart as LeCI's "acting" Warden.  Because Ronald Hart is the individual who currently has custody of petitioner, the caption of this case is hereby changed to reflect the proper party respondent.  *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

Ex. 1). Following a jury trial, petitioner was found guilty as charged. (*Id.,* Exs. 2-3). In the "Judgment Of Conviction Entry" filed February 11, 2005, petitioner was sentenced to the following terms of imprisonment, to be served consecutively: a four (4) year prison term on the aggravated robbery charge and a three (3) year prison term on the firearm specification. (*Id.,* Ex. 4).

On February 23, 2005, petitioner's trial counsel filed on petitioner's behalf a notice of appeal and application to proceed *in forma pauperis*, as well as a motion requesting to withdraw as petitioner's counsel and for the appointment of new counsel to represent petitioner on appeal. (*Id.,* Exs. 6-7). On March 7, 2005, petitioner separately filed a *pro se* notice of appeal, which was assigned a different appellate case number. (*Id.,* Ex. 8).

On March 8, 2005, the Butler County Common Pleas Court appointed petitioner's trial counsel to represent petitioner in his initial appeal to the Ohio Court of Appeals, Twelfth Appellate District. (*Id.,* Ex. 9). On March 10, 2005, the Ohio Court of Appeals entered an order *sua sponte* consolidating the two appeals. (*Id.,* Ex. 10).

On March 15, 2005, the Court of Appeals issued a scheduling order, which provided in pertinent part:

> IT IS . . . ORDERED that the TRANSCRIPT OF PROCEEDINGS . . . shall be filed with the County Clerk of Courts no later than <u>April 20, 2005.</u>
>
> *** <u>If a transcript of proceedings . . . is not to be filed,</u> then a <u>NOTICE OF LOCAL APPELLATE RULE 5 shall be filed</u> with the County Clerk of Courts within <u>30</u> days of the filing of the notice of appeal.

(*Id.,* Ex. 11).

On May 9, 2005, an order was entered by the state appellate court requiring petitioner to "show cause in writing within ten (10) days or on or before <u>May 20, 2005,</u> why the appeal should not be dismissed" based on counsel's failure "to file a transcript of proceedings within the time permitted by the court pursuant to [the] scheduling order issued on or about March 15, 2005." (*Id.,* Ex. 12). Apparently in

the absence of any response to the May 9, 2005 order, the Court of Appeals
dismissed petitioner's appeal with prejudice on June 6, 2005 on the stated ground
that petitioner had failed "to file a transcript of proceedings with the clerk's office
... as required by this court's scheduling order issued on or about March 15, 2005."
(*Id.*, Ex. 13).

Thereafter, on June 20, 2005, the trial court issued an order for transcripts to
be made with the cost to be paid by the County Treasurer.  (*Id.,* Ex. 14).  On June
23, 2005, the Butler County clerk's office issued a notice directed to the Ohio
Court of Appeals, Twelfth Appellate District, that the record for appeal was
"complete" with the filing on June 16, 2005 of the "transcript of the proceedings or
Local Rule 5 notice."  (*Id.,* Ex. 15).

It appears from the court's docket records that the transcript was returned to
petitioner's counsel on August 28, 2005.  (*See id.,* Ex. 21).  On December 9, 2005,
petitioner filed a *pro se* motion for extension of time to file transcript with the Ohio
Court of Appeals, claiming that he had not been appointed counsel to represent him
on appeal and had "not been able to have his case briefed and submitted to the
courts."  (*Id.,* Ex. 16).  On December 15, 2005, the Court of Appeals denied the
motion, because the "case was dismissed on June 6, 2005 for the reason that a
transcript of proceedings was not timely filed."  (*Id.,* Ex. 17).

It appears from the court's docket records that petitioner next filed a *pro se*
motion with the Ohio Court of Appeals on March 20, 2006 "to release Trial Court
Transcripts to appointed counsel in which to brief and argue Defendant-
Appellant's appeal."  (*Id.,* Exs. 19, 21).

Two months later, on May 30, 2006, petitioner filed a *pro se* motion for
leave to file a delayed appeal with the Ohio Court of Appeals.  (*Id.,* Exs. 18, 21).
In support of his motion, petitioner argued that he was denied his right to an appeal
due to the ineffectiveness of his counsel.  (*Id.,* Ex. 18).  He attached to the motion
two letters from his trial/appellate counsel.  In the first letter dated March 4, 2005,
petitioner's attorney stated that he had "filed the necessary documentation to begin
the appeal process within the statutory thirty day time period;" that he
"anticipate[d] receiving a scheduling order and other documentation within the
next several weeks;" and that "an appeal will take between six and nine months to
complete."  (*See id.*).  In the second letter dated November 18, 2005, petitioner's
counsel informed petitioner of an entry denying a motion for extension of time to

3

file the transcript in his case and that "[a]s you can see, I was not provided documentation with which to perfect your appeal." (*See id.*).[2]

On February 15, 2007, the Ohio Court of Appeals denied petitioner's motion for leave to file a delayed appeal. (*Id.,* Ex. 20).  The court reasoned:

> A motion for delayed appeal should be denied where the defendant was properly before the court on an original notice of appeal. . . . Because appellant was properly before the court on the original appeal of this matter, the present motion for leave to file a delayed appeal is DENIED.  Appellant's remedy, if any, is to file an application for reopening pursuant to App.R. 26(B).

(*Id.*).

Upon review of the Court of Appeals' and Supreme Court of Ohio's most recent docket records, which are available to the public on the internet, it appears that petitioner did not seek to appeal the Court of Appeals' February 15, 2007 decision to the Supreme Court of Ohio.  It also appears that petitioner did not file an application for reopening of his appeal as suggested by the Court of Appeals in that order.

The instant federal habeas corpus petition was filed in October 2006,[3] when petitioner's motion for leave to file a delayed appeal was still pending before the Ohio Court of Appeals for ruling. (*See* Doc. 2).  In the petition, petitioner alleges his counsel, who represented him both at trial and on appeal, was ineffective because he did not file an appellate brief.  (*Id.,* p. 6).  Petitioner further contends that he was denied his constitutional right of appeal.  He alleges the following facts in support of this claim: "After petitioner filed . . . notice of appeal[,] no appellate counsel was appointed.  Almost 1 year later, attorney Christopher M. Alexander

---

[2]The record is confusing with respect to counsel's second letter.  Although the letter referring to the Court of Appeals' denial of a motion for extension of time was dated November 18, 2005, upon review of the state court docket records, it appears that no such motion was filed that could have been ruled on before November 18, 2005.  (*See* Doc. 6, Ex. 21).

[3]The petition, which petitioner avers "was placed in the prison mailing system" on October 18, 2006, was stamped as "filed" on October 27, 2006.  (*See* Doc. 2).

4

notified me stating the trial court[] would not release the court transcript for him to brief and argue my case." (*Id.,* p. 7).

In the return of writ, respondent contends that the petition is subject to dismissal because petitioner has not exhausted an available state court remedy. Specifically, respondent argues that as the Ohio Court of Appeals mentioned in its February 15, 2007 entry denying petitioner's motion for leave to file a delayed appeal, petitioner "still has a state court remedy remaining in the form of an App. R. 26(B) application for reopening" of the direct appeal. (Doc. 6, Brief, p. 7).

## OPINION

### The Petition Should Be Stayed While Petitioner Exhausts The Arguably Available State Remedy Of A Delayed Application To Reopen The Appeal

An application for a writ of habeas corpus by a state prisoner shall not be granted unless the petitioner has exhausted his state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect petitioner's rights. 28 U.S.C. § 2254(b)(1). A state defendant with federal constitutional claims is required to first fairly present those claims to the state courts for consideration because of the equal obligation of the state courts to protect constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts. *See Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). The United States Supreme Court in *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999), held that to fulfill the exhaustion requirement "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Ohio, includes discretionary review by the state's highest court. *See Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If the petitioner fails to fairly present his claims through the requisite levels of state appellate review, but still has an avenue open to him in the state courts by which he may present the claims, his petition is subject to dismissal without prejudice for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(c). Although the exhaustion requirement is not jurisdictional, and an application for writ of

5

habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust state remedies, *see* 28 U.S.C. § 2254(b)(2), there is a strong presumption in favor of requiring exhaustion of state remedies. *See Granberry v. Greer,* 481 U.S. 129, 131 (1987). A "mixed" petition containing both unexhausted claims and claims that have been fairly presented to the state courts is subject to dismissal without prejudice on exhaustion grounds. *Rose v. Lundy,* 455 U.S. 509, 510, 522 (1982).

After the enactment in 1996 of the Antiterrorism and Effective Death Penalty Act (AEDPA), which "preserved *Lundy*'s total exhaustion requirement," but also imposed a one-year statute of limitations on the filing of federal habeas petitions, *Rhines v. Weber,* 544 U.S. 269, 275 (2005)*,* some federal courts (including the Sixth Circuit) adopted a "stay-and-abeyance" procedure to ensure habeas review was not precluded in the class of cases where a timely-filed petition was dismissed without prejudice on exhaustion grounds, but any subsequent petition raising the same claims after the exhaustion of the state remedies would be subject to dismissal with prejudice as time-barred. *See, e.g., Griffin v. Rogers,* 308 F.3d 647, 652 & n.1 (6th Cir. 2002); *Palmer v. Carlton,* 276 F.3d 777, 778-81 (6th Cir. 2002).[4]

More recently, in *Rhines,* 544 U.S. at 276, the Supreme Court affirmed that district courts have the discretion to issue stays in habeas cases, but that such discretion is circumscribed to the extent it must "be compatible with AEDPA's purposes." The Court pointed out that one of the AEDPA's purposes is to "reduce delays in the execution of state and federal criminal sentences" based on the "well-recognized interest in the finality of state judgments." *Id.* (quoting *Woodford v. Garceau,* 538 U.S. 202, 206 (2003), and *Duncan v. Walker,* 533 U.S. 167, 179

---

[4]This stay-and-abeyance approach was first suggested by Justice Stevens in a concurring opinion joined by Justice Souter in *Duncan v. Walker,* 533 U.S. 167 (2001). In *Duncan,* the Supreme Court held that a federal habeas corpus petition is not an "application for State post-conviction or other collateral review" that serves to toll the one-year limitations period under 28 U.S.C. § 2244(d)(2). In his concurring opinion, Justice Stevens indicated that the equitable powers of the federal court may be employed in such a situation to toll the statute of limitations for "the class of petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted." *Duncan,* 533 U.S. at 184. The justice suggested that the district court either stay the original habeas proceeding until petitioner exhausts his state court remedies or deem the limitations period tolled for the first habeas petition. *Id.* at 182-83.

(2001)). In addition, the AEDPA's statute of limitations tolling provision was intended to "reinforce[] the importance of *Lundy*'s "simple and clear instruction to potential litigants: before you bring any claims in federal court, be sure that you first have taken each one to state court." *Id.* at 276-77 (quoting *Lundy,* 455 U.S. at 520).

> The Court went on to determine that:
>
> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . .
>
> For these reasons, stay and abeyance should be available only in limited circumstances.

*Id.* at 277.

The Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277-78. However, on the other hand, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

In the absence of clear guidance from the Supreme Court, the federal courts have differed as to what constitutes "good cause" within the meaning of *Rhines* for failing to exhaust state court remedies. *See, e.g., Williams v. Hurley,* No. 2:05-cv-985, 2006 WL 1650771, at *10-11 (S.D. Ohio June 6, 2006) (Report & Recommendation) (King, M.J.) (discussing splits in authority as to whether "cause standard of *Rhines* requires a lesser showing than that for procedural default" and

7

whether ineffective assistance of counsel during state post-conviction proceedings may constitute "good cause for failure to exhaust claims in state proceedings"), *adopted,* 2006 WL 1804550 (S.D. Ohio June 28, 2006) (Holschuh, J.) (unpublished); *see also Tolliver v. Sheets,* No. 2:05-cv-1161, 2007 WL 2462650, at *17-18 (S.D. Ohio Aug. 27, 2007) (Smith, J.; King, M.J.) (unpublished). In *Pace v. DiGuglielmo,* 544 U.S. 408, 416 (2005), the Supreme Court stated only that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file" a petition containing unexhausted claims in the federal court.

In this case, as respondent has argued, it appears that petitioner has failed to exhaust available state court remedies with respect to the claims alleged as grounds for federal habeas relief–i.e., (1) that he was denied his right of appeal, and (2) that he was denied effective assistance of counsel on appeal. As the Ohio Court of Appeals indicated in its February 15, 2007 Entry denying petitioner's motion for leave to file a delayed appeal (*see* Doc. 6, Ex. 20), the remedy of a delayed application for reopening of the appeal under Ohio R. App. P. 26(B) arguably remains available for petitioner to pursue these claims.[5]

In addition, this case falls within the category of habeas cases where the timely-filed petition has remained pending in the federal court for several months without any further action taken in the state courts so that, if it is dismissed without prejudice on exhaustion grounds, any subsequent petition raising the same claims after the exhaustion of state court remedies would be subject to dismissal with prejudice on statute of limitations grounds. *See, e.g., Griffin,* 308 F.3d at 652 & n.1; *Palmer,* 276 F.3d at 778-81; *cf. Duncan,* 533 U.S. at 182-84 (Stevens, J., concurring).

Finally, although the question is close, the record supports a finding of good cause for petitioner's failure to exhaust his claims for relief in the state courts before commencing this action. Petitioner filed the instant federal habeas petition while awaiting a decision by the state court of appeals on his motion for leave to

---

[5]To be deemed timely, an application for reopening of the appeal based on a claim of ineffective assistance of appellate counsel must "be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate court judgment." Ohio R. App. P. 26(B)(1). However, review of an untimely application remains available insofar as the applicant is able to show "good cause for filing at a later time." *Id.*

8

file a delayed appeal, which was subject to dismissal based on petitioner's failure to show good cause for the untimely filing. *See* Ohio R. App. P. 5(A). Although the Sixth Circuit has held that the pendency of a motion for delayed appeal in the state courts may serve to toll the AEDPA's one-year limitations period, *see Searcy v. Carter,* 246 F.3d 515, 518-19 (6th Cir.), *cert. denied,* 534 U.S. 905 (2001), the Sixth Circuit and the Supreme Court also have held that a state motion for post-conviction relief or other collateral review that is rejected by the state courts on timeliness grounds is not "properly filed" within the meaning of the AEDPA's statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2), *see Pace,* 544 U.S. at 416-17; *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003); *Israfil v. Russell*, 276 F.3d 768, 771-72 (6th Cir. 2001), *cert. denied,* 535 U.S. 1088 (2002).

Therefore, based on the circumstances presented in this case, petitioner reasonably could have been confused that the then-pending motion for delayed appeal might not serve to toll the AEDPA's one-year statute of limitations. In other words, petitioner reasonably could have believed that he would lose the opportunity to seek federal habeas relief if he allowed the one-year limitations period to run its course during the pendency of his delayed appeal motion in the state courts.

In addition, in this case, the unexhausted claims are potentially meritorious to the extent that it appears from the present record that petitioner can argue he was deprived of his right to an appeal based on his counsel's failure to comply with the Ohio Court of Appeals' March 15, 2005 scheduling order, as well as his failure to respond to the ensuing show cause order issued May 9, 2005, which ultimately resulted in the dismissal of the appeal with prejudice on June 6, 2005. (*See* Doc. 6, Exs. 11-13).

Moreover, although some delays have occurred in the state courts in this case, the Court finds that petitioner has not engaged in intentionally dilatory litigation tactics. The appellate record is confusing in and of itself and indeed suggests there may have been some lapse in communication, given that within a few weeks after the appeal was dismissed with prejudice, the trial court issued a notice to the Ohio Court of Appeals that the record for appeal was "complete" with the filing of the trial transcript on June 16, 2005. (*See id.,* Ex. 15). The Court of Appeals did not return the transcript to petitioner's counsel until August 28, 2005. When counsel next wrote petitioner in a letter dated November 18, 2005 that he was "not provided documentation with which to perfect your appeal," petitioner

soon thereafter took action seeking to be heard on appeal on a *pro se* basis, albeit improperly by way of a motion for extension of time in which to file the trial transcript.

It is conceded that petitioner waited a few months after the Ohio Court of Appeals denied his motion for extension of time on December 15, 2005, before he again unsuccessfully attempted to obtain an appeal in the state courts by filing a *pro se* motion on March 20, 2006 for release of the transcripts to his counsel, which was followed by a *pro se* motion for leave to file a delayed appeal on May 30, 2006. Petitioner's motion for delayed appeal was denied on February 15, 2007, and petitioner failed to follow through on the recommendation contained in that order to seek relief by way of an application to reopen his appeal under Ohio R. App. P. 26(B). However, by that time, the instant action had been filed. Therefore, petitioner easily may have been confused as to whether he could at that point file an application for reopening with the Ohio Court of Appeals, while at the same time awaiting a decision on the merits of the same claims that had been asserted as grounds for relief in his federal habeas petition.

Overall, it appears from the record that the delays that have occurred in the state courts have stemmed more from confusion on petitioner's part regarding the status of his appeal, whether he was being assisted by counsel on appeal, and the procedures to follow in obtaining appellate review, as opposed to an intentional decision by petitioner to engage in dilatory litigation tactics.

Accordingly, out of an abundance of caution, the undersigned concludes that the instant petition should not be dismissed without prejudice based on petitioner's failure to exhaust state court remedies, as respondent has argued. Instead, it is **RECOMMENDED** that the instant proceedings be **STAYED** while petitioner is afforded the opportunity to fully exhaust the arguably available state court remedy of a delayed application to reopen his appeal. To ensure that judicial and administrative resources are conserved, it is **FURTHER RECOMMENDED** that the stay take the form of an administrative stay and that the case be terminated on the Court's active docket.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The petition (Doc. 2) be administratively **STAYED** and

10

**TERMINATED** on the Court's active docket pending petitioner's exhaustion of his Ohio remedies. The stay should be conditioned on: (1) petitioner's filing with the Ohio Court of Appeals, Twelfth Appellate District, a delayed application to reopen his appeal pursuant to Ohio R. App. P. 26(B) within thirty (30) days of the date of filing of any Order adopting this Report and Recommendation; **and** (2) petitioner's filing a motion to reinstate the case on this Court's active docket within thirty (30) days after fully exhausting the remedy of a delayed reopening application through the requisite levels of state appellate review as discussed herein, *see supra* pp. 5, 8.  Petitioner should be granted leave to reinstate the case on the Court's active docket when he has exhausted his Ohio remedies based on a showing that he has complied with the conditions of the stay.

2.  A certificate of appealability should not issue under the standard set forth in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), which is applicable to this case involving a recommended stay of the petition so that petitioner can exhaust available state court remedies.  *Cf. Porter v. White,* No. 01-CV-72798-DT, 2001 WL 902612, at *3 (E.D. Mich. Aug. 6, 2001) (unpublished) (citing *Henry v. Dep't of Corrections,* 197 F.3d 1361 (11th Cir. 1999) (pre-*Slack* case)) (certificate of appealability denied when case dismissed on exhaustion grounds).  *See generally Carmichael v. White,* 163 F.3d 1044, 1045 (8th Cir. 1998); *Christy v. Horn,* 115 F.3d 201, 203-206 (3rd Cir. 1997) (order staying habeas petition to allow exhaustion of state remedies is appealable collateral order).  "Jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling that petitioner has failed to exhaust state court remedies and that the case should be stayed (as opposed to dismissed without prejudice) pending exhaustion of such remedies.[6]

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken

---

[6]Because this Court finds the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated viable constitutional claims for relief in his habeas petition.  *See Slack,* 529 U.S. at 484.  Nevertheless, it is noted that as discussed earlier, *see supra* p. 9, petitioner's claims for relief are "potentially meritorious."

in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Date: __12/4/07__

       cbc

s/Timothy S. Black

Timothy S. Black

United States Magistrate Judge

J:\BRYANCC\2007 habeas orders\06-723pet.exh-dism-stay.wpd

# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
### WESTERN  DIVISION

_____

Billy Ray Hall,
                 Petitioner

        vs.                            Case No. 1:06cv723
                                       (Spiegel, S.J.; Black, M.J.)

Ronald Hart,
                 Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).